CITY OF COLUMBUS, Appellant,

v.

MEYER, Appellee.

City of Columbus, Appellant,

v.

Spingola, Appellee.

[Cite as *Columbus v. Meyer*, 152 Ohio App.3d 46, 2003-Ohio-1270.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 01AP–1471 and 01AP–1472.

Decided March 18, 2003.

48

Richard C. Pfeiffer Jr., City Attorney, and Denice D. Weinberg, Assistant City Attorney, for appellant.

Thomas W. Condit, for appellees.

HARSHA, Judge.

{¶ 1} Plaintiff-appellant, the city of Columbus, appeals from judgments of the Franklin County Municipal Court dismissing criminal complaints alleging that defendants-appellees, Thomas R. Meyer and Charles S. Spingola, violated the city's prohibition on open burning without a permit.

{¶ 2} On June 23, 2001, defendants attended the annual Columbus "Gay Pride Parade," where they were arrested for burning a "rainbow flag" in an apparent protest of the event. During the parade, defendants ignited the flag with a flammable liquid at the intersection of Broad Street and High Street, directly across from the State Capitol Building. The city charged defendants with open burning without a permit in violation Columbus City Code ("C.C.") 2501.985[1] and Ohio Fire Code ("O.F.C.") F–403, as incorporated into Title 25 of the Columbus City Code, pursuant to C.C. 2594.01.[2] Defendants moved to dismiss the charges against them on the grounds that O.F.C. F–403 violates the First Amendment's prohibition on laws abridging freedom of speech. Following a series of procedural and substantive hearings, the city was permitted to amend its complaints to delete any reference to the use of a flammable liquid as had appeared in the original complaints, and the parties agreed to stipulations of fact including that defendants had never applied for a permit to burn a flag.

---

1.  C.C. 2501.985 provides: "No person shall knowingly violate any provision of the Columbus Fire Prevention Code or the Ohio Fire Code as incorporated into the Columbus Fire Prevention Code or any order made pursuant to such."

2.  C.C. 2594.01 provides: "This chapter of the Columbus Fire Prevention Code shall include in its entirety, and as changed from time to time, the OFC Article 4, OAC 1301: 7-7-04, Open Flames or Burning."

{¶ 3}   Thereafter, the trial court issued a decision granting defendants' motions to dismiss the charges on the basis that O.F.C. F–403, "as applied to flag burning," was an unconstitutional intrusion upon defendants' First Amendment right to free speech.   The city appeals from that judgment raising the following two assignments of error:

{¶ 4}   "First Assignment of Error

{¶ 5}   "The trial court erred, as a matter of law, in declaring the act of burning a flag per se to be exempt from reasonable time, place, and manner restrictions and in finding, as a result, Ohio Fire Code F–403.1 unconstitutional as applied in contravention of the First and Fourteenth Amendments to the United States Constitution.

{¶ 6}   "Second Assignment of Error

{¶ 7}   "The trial court erred, as a matter of law, in finding that the Appellees had standing to challenge the constitutionality of [C.C. 2594.01] 'as applied' where Appellees did not, in fact, apply for a permit."

{¶ 8}   For organizational reasons, we will initially address the city's second assignment of error, which asserts that defendants lack standing to raise an "as applied" challenge to O.F.C. F–403. That section, which was adopted and promulgated as part of Ohio Adm.Code 1301:7–7–04, provides:

{¶ 9}   "(C) Section F–403.0 Open burning

{¶ 10}   "(1) F–403.1 General:  A person shall not cause or allow open burning unless approved in accordance with this code.

{¶ 11}   "(2) F–403.2 Definitions:  The following words and terms shall, for the purposes of this section and as stated elsewhere in this code, have the meanings shown herein.

{¶ 12}   "Bonfire:  An outdoor fire utilized for ceremonial purposes.

{¶ 13}   "Open burning:  The burning of any materials wherein products of combustion are emitted directly into the ambient air without passing through a stack or chimney from an enclosed chamber.   For the purpose of this definition, a chamber shall be regarded as enclosed, when, during the time combustion occurs, only apertures, ducts, stacks, flues or chimneys necessary to provide combustion air and permit the escape of exhaust gas are open.

{¶ 14}   "Recreational fire:  An outdoor fire utilized to cook food for human consumption.

{¶ 15}   "(3) F–403.3 Allowable burning:  Open burning shall be allowed without prior notification to the code official for recreational fires, highway safety flares, smudge pots and similar occupational needs.

{¶ 16} "(4) F–403.4 Approval required: Open burning shall be allowed after obtaining approval from the code official for recognized silvicultural or range or wildlife management practices, prevention or control of disease or pests, providing heat for outworkers, and a bonfire.

{¶ 17} "(a) F–403.4.1 Application: Applications for open burning shall be submitted in writing at least ten days before the fire is set and shall be in such form and contain such information as required by the code official. Such applications shall contain, as a minimum, information regarding the purpose of the proposed burning, the nature and quantities of material to be burned, the date when such burning will take place, the location of the burning site, and the on-site fire-extinguishing equipment to be provided.

{¶ 18} "(b) F–403.4.2 Authorization: Open burning shall be permitted with prior notification to the code official and upon receipt of written permission from the jurisdictional environmental protection agency (EPA) authority, provided that any conditions specified in the permission are followed for:

{¶ 19} "(i) Disposal of hazardous or toxic material where the EPA determines that there is no practical alternative method of disposal;

{¶ 20} "(ii) Instruction in methods of fire fighting or for research in control of fires, in emergency or other extraordinary circumstances for any purpose determined to be necessary by the EPA;

{¶ 21} "(iii) Disposal of landscape waste except residential and agricultural waste; or

{¶ 22} "(iv) Recognized agricultural or horticultural management purposes to maintain or increase the quantity or quality of agricultural or horticultural production.

{¶ 23} "Where the jurisdictional EPA written permission is not applicable, the code official shall give written permission provided that approved fire safety requirements and emission standards will be met.

{¶ 24} "(c) F–403.4.3 Open burning prohibited: The code official shall prohibit open burning that will be offensive or objectionable due to smoke or odor emissions when atmospheric conditions or local circumstances make such fire hazardous. The code official shall order the extinguishment, by the permit holder or the fire department, of any open burning that creates or adds to a hazardous or objectionable situation.

{¶ 25} "(5) F–403.5 Location: The location for any open burning shall not be less than 50 feet (15240 mm) from any structure, and provisions shall be made to prevent the fire from spreading to within 50 feet (15240 mm) of any structure.

Fires in approved containers shall be permitted, provided that such fires are not less than 15 feet (4572 mm) from any structure.

{¶ 26} "(6) F–403.6 Materials: Open burning shall not be utilized for waste disposal purposes, shall be of the minimum size for the intended purpose, and the fuel shall be chosen to minimize the generation and emission of air contaminants.

{¶ 27} "(7) F403.7 Attendance: Any open burning shall be constantly attended until the fire is extinguished. At least one portable fire extinguisher with a minimum 4–A rating, two portable fire extinguishers with a minimum 2–A rating each, or other approved on-site fire extinguishing equipment, such as dirt, sand, water barrel, garden hose or water truck, shall be available for immediate utilization.

{¶ 28} "(8) F–403.8 Bonfire size and duration: A bonfire shall not be more than 5 feet (1524 mm) by 5 feet (1524 mm) by 5 feet (1524 mm) in dimension and shall not burn longer than 3 hours. The maximum size and duration of a bonfire shall not be increased by the code official unless it is determined that fire safety requirements of the situation and the desirable duration of burn warrant the increase.

{¶ 29} "(a) F–403.8.1 Material: Fuel for a bonfire shall consist only of seasoned dry firewood and shall be ignited with a small quantity of paper. The fire shall not be utilized for waste disposal purposes, and the fuel shall be chosen to minimize the generation of air contaminants.

{¶ 30} "(b) F–403.8.2 Permit: All permits shall be requested by and issued to the owner of the land upon which the bonfire is to be kindled."

{¶ 31} The city argues that defendants might well have been allowed to conduct their flag burning if they had first applied for a permit to conduct a ceremonial fire[3] under O.F.C. F–403, and that defendants' failure to apply for a permit under O.F.C. F–403 deprives them of standing to bring an "as applied" challenge to the provision. An "as applied" challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct, *Bischoff v. Florida* (M.D.Fla.2003), 242 F.Supp.2d 1226. In contrast, a facial challenge asserts that a law is unconstitutional as applied to the hypothetical conduct of a third party and without regard to the challenger's specific conduct. *Forsyth Cty., Georgia v. The Nationalist Movement* (1992), 505 U.S. 123, 129, 112 S.Ct. 2395, 120 L.Ed.2d 101; *Z.J. Gifts D–4, L.L.C. v. Littleton* (C.A.10, 2002), 311 F.3d 1220, 1226. Here, O.F.C. F–403 does not prohibit flag burning per se but simply prohibits "ceremonial" burning, without a permit. Consequently, an "as applied"

---

3. O.F.C. F–403.2 defines a "bonfire" as "[a]n outdoor fire utilized for ceremonial purposes." Ohio Adm.Code 1301:7–7–04(C)(2).

challenge to O.F.C. F–403 would assert that defendants were unconstitutionally denied a permit to burn a flag, while a facial challenge would assert that the provision cannot constitutionally be applied to symbolic[4] flag burning generally.

{¶ 32} A party may not bring an "as applied" challenge to a licensing or permitting scheme unless the party has applied for and been denied a license or permit under the scheme at issue. *Union Twp. Bd. of Trustees v. Old 74 Corp.* (2000), 137 Ohio App.3d 289, 295, 738 N.E.2d 477; *Prayze FM v. Fed. Communications Comm.* (C.A.2, 2000), 214 F.3d 245, 251; *Flynt & LFP, Inc. v. Rumsfeld* (D.D.C.2003), 245 F.Supp.2d 94. Because defendants never applied for a permit to burn a flag under O.F.C. F–403, the city is correct that defendants lack standing to bring an "as applied" challenge to the provision. The city's victory in this respect is of little moment, however, as the trial court's judgment appears to find the code unconstitutional on its face ("This Court * * * cannot determine how, even if they applied, defendants would have ever been given a permit merely to burn a flag"). While it is true that defendants' motion to dismiss asserts that O.F.C. F–403 is overbroad "both facially and as applied," the actual arguments presented by defendants raise only facial challenges. Practically speaking, that is as it must be. Defendants never subjected themselves to O.F.C. F–403's permitting process, and consequently simply have no facts from which to argue that O.F.C. F–403 is unconstitutional as applied to them.[5] Nonetheless, to the extent, if any, that the trial court intended the language "therefore as applied to flag burning" to address an "as applied" challenge, we agree with the city. The city's second assignment of error is sustained to this limited extent.

{¶ 33} The city's first assignment of error challenges the trial court's determination that O.F.C. F–403 is unconstitutional because it limits symbolic flag burning. In doing so, the trial court relied upon *Texas v. Johnson* (1989), 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342, where the defendant was convicted

---

4. Conduct, including flag burning, which is " 'sufficiently imbued with elements of communication' " and intended to communicate a particularized message is protected by the First Amendment. *Texas v. Johnson* (1989), 491 U.S. 397, 404–406, 109 S.Ct. 2533, 105 L.Ed.2d 342, quoting *Spence v. Washington* (1974), 418 U.S. 405, 409–411, 94 S.Ct. 2727, 41 L.Ed.2d 842.

5. That defendants are able to raise only a facial challenge to O.F.C. F–403 is somewhat difficult to grasp in this case due to the fact that this matter arises out of a criminal action rather than an action to have O.F.C. F–403 declared unconstitutional. While defendants' own conduct is not relevant to their constitutional challenge, it is relevant with respect to their criminal culpability under C.C. 2501.985. Specifically, because the city concedes that defendants' conduct constituted symbolic flag burning, its ability to prosecute defendants for burning without a permit turns entirely on whether or not O.F.C. F–403 can constitutionally be applied to symbolic flag burning.

under a Texas statute that prohibited the intentional or knowing desecration of a state or national flag " 'in a way that the actor knows will seriously offend one or more persons likely to observe or discover his action.' " Id. at 400, 109 S.Ct. 2533, 105 L.Ed.2d 342, fn. 1, quoting 1989 Tex. Penal Code Ann. 42.09(b). However, as the Supreme Court made very clear, *Johnson* is limited to laws that by their terms seek to regulate free expression. Id. at 403, 412, 109 S.Ct. 2533, 105 L.Ed.2d 342, fn. 8. O.F.C. F–403 simply is not such a law. Unlike the statute at issue in *Johnson*, which effectively made it a crime to express certain viewpoints using the flag, O.F.C. F–403 is a content-neutral regulation intended to "prescribe minimum requirements and controls to safeguard life, property or public welfare from the hazards of fire and explosion * * *." Ohio Adm.Code 1301:7–1–01(B), FM–100.2. Accordingly, O.F.C. F–403 is not subject to strict scrutiny as set forth in *Johnson*. Id. at 403, 109 S.Ct. 2533, 105 L.Ed.2d 342.

{¶ 34} Although O.F.C. F–403 is not subject to the test for constitutionality set forth in *Johnson*, appellees contend that it is nonetheless unconstitutional in that it is an impermissible prior restraint on their freedom of expression, an improper time, place, and manner restriction, and that it is void for vagueness and/or overbreadth.

{¶ 35} We turn initially to defendants' claim that O.F.C. F–403 constitutes an impermissible prior restraint on free expression. A law that requires an individual to obtain a permit before engaging in expressive conduct is a prior restraint. *Nightclubs, Inc. v. Paducah* (C.A.6, 2000), 202 F.3d 884, 889. Prior restraints are particularly disfavored and bear a heavy presumption of unconstitutionality, as a free society prefers to punish the few who abuse the right of free speech after they break the law, rather than to suppress all speech beforehand. *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 559, 95 S.Ct. 1239, 43 L.Ed.2d 448.

{¶ 36} A law subjecting the exercise of First Amendment freedoms to the prior restraint of a license or permit must be declared unconstitutional unless it contains narrow, objective, and definite standards to guide the licensing authority. *Shuttlesworth v. Birmingham* (1969), 394 U.S. 147, 150–151, 89 S.Ct. 935, 22 L.Ed.2d 162. The rationale underpinning this doctrine "is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *Lakewood v. Plain Dealer Publishing Co.* (1988), 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771. Such standardless discretion on the part of government officials is dangerous because it may intimidate parties into censoring their own speech and because it prevents a meaningful review of the reasons underlying the denial of a permit. Id. at 758–759, 108 S.Ct. 2138, 100 L.Ed.2d 771.

**{¶ 37}** Because of the dangers prior restraints pose to free expression, the Supreme Court has altered the traditional rule of standing to permit parties to challenge an alleged prior restraint without showing that their own First Amendment rights have been violated. *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830. However, this standing exception does not apply to all permitting schemes. In *Lakewood*, the Supreme Court announced a two-part test for deciding whether a facial challenge may be brought against a particular permitting scheme. First, the licensing regulation must give a government official or agency "substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." Id., 486 U.S. at 759, 108 S.Ct. 2138, 100 L.Ed.2d 771. Second, regulation "must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." Id. With respect to the second component, the court drew a distinction between laws of general application, such as a law requiring building permits, that are not aimed at conduct commonly associated with expression and therefore present little opportunity for censorship, and those "directed narrowly and specifically at expression or conduct commonly associated with expression," like laws regulating leafleting. Id. at 760–761, 108 S.Ct. 2138, 100 L.Ed.2d 771.

**{¶ 38}** Here, it is readily apparent that under the *Lakewood* test, defendants may not facially challenge O.F.C. F–403 as an unconstitutional prior restraint, as the regulation is not directed narrowly and specifically at expression or conduct commonly associated with expression. O.F.C. F–403 is a content-neutral regulation aimed at fire prevention that places only an incidental burden on free expression. In addition, O.F.C. F–403 does not vest city officials with broad discretion to discriminate, but presumes that a permit will be granted if the applicant shows that "fire safety requirements and emission standards will be met." Ohio Adm.Code 1301:7–7–04(C)(4)(b); O.F.C. F–403.4.2.

**{¶ 39}** This brings us to defendants' assertion that O.F.C. F–403 is an improper time, place, and manner restriction. In *United States v. O'Brien* (1968), 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672, the Supreme Court established a four-part test for determining whether a regulation aimed at nonexpressive conduct, but which has an incidental burden on expressive conduct, constitutes a reasonable time, place, and manner restriction. See *Clark v. Community for Creative Non–Violence* (1984), 468 U.S. 288, 298, 104 S.Ct. 3065, 82 L.Ed.2d 221, fn. 8 (discussing the relationship between the traditional time, place, and manner analysis and the test set forth in *O'Brien*). The *O'Brien* test provides that a government regulation is sufficiently justified if (1) it is within the power of the governmental entity, (2) it furthers an important or substantial

governmental interest, (3) the governmental interest is unrelated to the suppression of free expression, and (4) the incidental restriction on First Amendment freedoms is no greater than is essential to the furtherance of that interest. Id., 391 U.S. at 377, 88 S.Ct. 1673, 20 L.Ed.2d 672.

{¶ 40} Applying the *O'Brien* test to O.F.C. F–403, we find that the regulation is justified despite its incidental limitations on expressive activity such as flag burning. The regulation easily satisfies the first three parts of the *O'Brien* test. Regulating open burning is unquestionably within the city's constitutional power. See *W.W. Enterprises, Inc. v. Brenneman* (1960), 112 Ohio App. 242, 245–246, 16 O.O.2d 154, 175 N.E.2d 854 (holding that enactment of fire prevention regulation was within a municipality's police powers). In addition, O.F.C. F–403 furthers the substantial governmental purpose of reducing the risk of fire and the loss of life and property that often accompanies it. Finally, it would be frivolous to contend that O.F.C. F–403 was in any way expressly intended to suppress free expression.

{¶ 41} The fourth part of the *O'Brien* test requires that O.F.C. F–403's incidental restriction on First Amendment freedoms be no greater than is essential to the furtherance of the city's interest in fire prevention. Notably, the regulation need not be the least restrictive or least intrusive means of furthering the government's interest. *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 798–799, 109 S.Ct. 2746, 105 L.Ed.2d 661. Such strict scrutiny applies only to content-based regulations, while the *O'Brien* test applies to regulations aimed at nonexpressive content. Id. at fn. 6. Rather, the *O'Brien* test applies the more relaxed intermediate scrutiny standard. *Erie v. Pap's A.M.* (2000), 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (plurality opinion). O.F.C. F–403 passes this prong of the *O'Brien* test as well, as it limits only expressive conduct involving fire. While it may well be that expressive conduct involving fire is highly effective, requiring that one obtain a permit before engaging in such conduct places only a minor restriction on free expression. On the one hand, a party who wishes to engage in expressive conduct involving burning may well be able to do so if they first apply for a permit. On the other hand, even if such conduct is not ultimately permitted, the limitation on expressive burning is relatively minor when measured against the avenues of expression speech that remain open and unaffected by the regulation. Accordingly, O.F.C. F–403 is not an illegal time, place, and manner regulation.

{¶ 42} The void-for-vagueness doctrine draws upon the procedural due process requirement that a law must provide "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Jordan v. De George* (1951), 341 U.S. 223, 231–232, 71 S.Ct. 703, 95 L.Ed.

886. A law is unconstitutionally vague if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden * * *." *United States v. Harriss* (1954), 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989. When these standards are applied to O.F.C. F–403, it is readily apparent that the provision provides adequate warning of the activities it prohibits. Reduced to its simplest terms, the plain language of O.F.C. F–403 prohibits all open burning except for (1) cooking fires, highway flares, and smudge pots, which may be burned without a permit; and (2) fires for silvicultural, range or wildlife management, prevention or control of diseases or pests, providing heat for outdoor workers, and ceremonial fires, which may be conducted only after a permit has been obtained. The language of O.F.C. F–403 is sufficiently clear to put defendants on notice that burning a flag without first attempting to obtain a permit is prohibited conduct.

{¶ 43} Finally, we address defendants' concern that the code is overbroad. Only a statute that is substantially overbroad may be invalidated on its face. *Houston v. Hill* (1987), 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398. Accordingly, the overbreadth doctrine is viewed as "strong medicine" to be applied "sparingly and only as a last resort." *Am. Life League, Inc. v. Reno* (C.A.4, 1995), 47 F.3d 642, 653 (citing *Broadrick*, supra). While the code might be applied to some protected expression, such as flag burning, that conduct is prohibited only when fire safety requirements and emission standards cannot be met. Under O.F.C. F–403.4.3, open burning is prohibited only when it becomes "offensive or objectionable due to smoke or odor emissions when atmospheric conditions or local circumstances make such fires hazardous." Ohio Adm.Code 1301:7–7–04(C)(4)(c). Thus, under the code, the city fire officials must issue a permit unless the fire will create hazardous smoke, odor, or fire safety conditions. See Ohio Adm.Code 1301:7–7–04(C)(4)(b)(iv); O.F.C. F–403.4.2. We fail to see how the code is substantially overbroad in relation to its legitimate purpose of protecting public safety and preventing fire hazards. See *American Life League* at 653.

{¶ 44} The city's first assignment of error is sustained.

{¶ 45} Both of the city's assignments of error having been sustained, we reverse the judgment of the Franklin County Municipal Court and remand this matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

LAZARUS and BROWN, JJ., concur.

WILLIAM H. HARSHA III, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.