OPINION
{¶ 1} In these consolidated cases, appellant, James Conrad, Administrator, Ohio Bureau of Workers' Compensation ("bureau"), appeals from a judgment of the Franklin County Court of Common Pleas that reversed the bureau's order revoking the certification of appellee, Charles Kistler, D.O., as a provider in the bureau's Health Partnership Program ("HPP"). For the following reasons, we reverse that judgment.
 {¶ 2} Appellee has been licensed to practice medicine in Ohio and Florida[1] since the early 1970s. He began his medical career in Florida. On July 23, 1981, appellee pled guilty in the United States District Court for the Southern District of Florida to one felony count of conspiring to defraud insurance companies by submitting false and inflated medical bills (the "Florida conviction"). The court found appellee guilty and placed him on probation for almost five years. He was discharged from probation on March 6, 1984. Despite the conviction, appellee retained his medical licenses. He moved to Columbus, Ohio, in 1980 and has maintained a family practice since that time, devoting a significant percentage of his practice to treating injured workers.
 {¶ 3} In 1993, Ohio's General Assembly created the HPP, a comprehensive managed care program administered by the bureau to provide medical services to employees for their compensable work-related injuries or occupational diseases. R.C. 4121.441(A). By legislative mandate, the bureau had to adopt rules to establish standards and criteria for the bureau to certify, recertify, penalize, and decertify a health care provider or a vendor for participation in the HPP. See R.C. 4121.441(A)(11) and (12). Accordingly, the bureau adopted Ohio Adm. Code 4123-6-022, which provides, in relevant part:
(A) * * * Providers must meet all licensing, certification, or accreditation requirements necessary to provide services in Ohio. * * *
(B) The minimum credentials for a provider, where applicable based upon the type of provider, are as follows. The provider shall:
* * *
(5) Not have a history of a felony conviction in any jurisdiction, a conviction under a federal controlled substance act, a conviction for an act involving dishonesty, fraud, or misrepresentation, a conviction for a misdemeanor committed in the course of practice, or court supervised intervention or treatment in lieu of conviction pursuant to section 2951.041 of the Revised Code.
 {¶ 4} A HPP certified provider treats injured workers and receives payments from the bureau for all services provided. Ohio Adm. Code 4123-6-11(A). In contrast, a non-certified provider is paid only for initial or emergency treatment of an employee. Ohio Adm. Code 4123-6-12(A). Without approval from the employee's managed care organization, any further payments are the responsibility of the injured employee. Id.
 {¶ 5} In 1996, appellee applied to become a HPP certified provider. In his application, appellee disclosed his Florida conviction and attached related documents, including his indictment and the court's judgment of conviction. The bureau certified appellee as a HPP provider and entered into a provider agreement with him defining the relationship between the two parties. In 2002, appellee filed an application for recertification in the HPP. Again, he attached a document detailing his Florida conviction. The bureau recertified appellee as a HPP provider on August 24, 2002.
 {¶ 6} On January 15, 2003, the bureau notified appellee that his 2002 recertification was in error and proposed to revoke his certification due to the Florida conviction. Appellee requested a hearing concerning the bureau's proposed action. On March 28, 2003, a hearing was held in front of a bureau hearing officer. Appellee was the only witness at the hearing and the records of his Florida conviction were admitted as evidence. After the hearing, the bureau's hearing officer recommended the revocation of appellee's certification based upon Ohio Adm. Code 4123-6-022(B)(5) and his Florida conviction. The bureau's administrator adopted the hearing officer's recommendation and ordered the revocation of appellee's certification. Appellee appealed the bureau's order to the Franklin County Court of Common Pleas. That court reversed, finding that Ohio Adm. Code 4123-6-022(B)(5), as applied to appellee, violated his constitutional rights to due process and equal protection.
 {¶ 7} In case number 04AP-1100, the bureau appeals and assigns the following error:
The court erred by holding that decertification of a provider pursuant to Ohio Adm. Code 4123-06-022(B), for "having a history of a felony" is unconstitutional, in violation of the Fourteenth Amendment's guarantees of due process and equal protection.
 {¶ 8} In case number 04AP-1095, appellee filed his own notice of appeal from the trial court's decision. However, because he seeks to defend the trial court's decision and does not seek to change the judgment, we construe his assignments of error as cross-assignments of error:
[I]. The Bureau of Workers' Compensation (BWC) is estopped from decertifying Dr. Kistler because it previously certified him as a provider when all of the facts were known to the BWC.
[II.] The BWC's administrative rule found at OAC 4123-6-022(B)(5) is outside the scope of the administrative authority granted to the BWC by the enabling statute and thus is unenforceable.
[III.] The blanket rule of the BWC to forever bar a Physician who had been convicted of a felony offense from attaining the status of a certified HPP provider is arbitrary and capricious and thus denies Dr. Kistler due process of law and equal protection of the law.
[IV.] The March 27, 2003 Entry of the Court of Common Pleas, Franklin County, Ohio precludes consideration of Dr. Kistler's Florida conviction in this certification process.
[V.] The administrative hearing process denied Dr. Kistler due process of law in that the findings of fact by the Hearing Officer were insufficient and the conclusions of law were unsupported by the facts and law.
 {¶ 9} In an administrative appeal pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative and substantial evidence and is in accordance with law. Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87. On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence.Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd.of Edn. (1992), 63 Ohio St.3d 705, 707. In reviewing the court of common pleas' determination as to whether the commission's order was supported by reliable, probative and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. Roy v. Ohio StateMedical Bd. (1992), 80 Ohio App.3d 675, 680. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. However, on the question of whether the commission's order was in accordance with law, this court's review is plenary.Univ. Hosp., Univ. of Cincinnati College of Medicine v. StateEmp. Relations Bd. (1992), 63 Ohio St.3d 339, 343.
 {¶ 10} Without any significant legal analysis, the trial court concluded that the application of Ohio Adm. Code 4123-6-022(B)(5) ("the rule") violated appellee's constitutional rights to due process and equal protection. The bureau's single assignment of error and appellee's third cross-assignment of error both concern this ruling. We will therefore address them together.
 {¶ 11} We begin with the presumption that the rule is constitutional, unless it is shown beyond a reasonable doubt that the rule violates a constitutional provision. Fabrey v. McDonaldVillage Police Dept. (1994), 70 Ohio St.3d 351, 352. Appellee argues that the rule is unconstitutional as applied in his case. An "as applied" challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct. Columbus v. Meyer, 152 Ohio App.3d 46, 2003-Ohio-1270, at ¶ 31. "If a party challenges a statute on the ground that it is unconstitutional as applied to a particular set of facts, `the burden is upon the party making the attack to present clear and convincing evidence of a presently existing state of facts which makes the Act unconstitutional and void when applied thereto.' "State v. Small, 162 Ohio App.3d 325, 2005-Ohio-2291, at ¶ 20, quoting Cleveland Gear Co. v. Limbach (1988),35 Ohio St.3d 229, 231. The practical effect of holding a statute unconstitutional as applied is to prevent its future application in a similar context, but not to render it utterly inoperative.Yajnik v. Akron Dept. of Health, 101 Ohio St.3d 106,2004-Ohio-357, at ¶ 14.
 {¶ 12} The rule, in relevant part, prohibits physicians from being certified as a HPP provider if they have: (1) a felony conviction, or (2) a conviction for an act involving dishonesty, fraud, or misrepresentation. Due to his Florida conviction, the bureau revoked appellee's certification on both of these grounds. The bureau has no discretion to certify a physician once it is demonstrated that the physician has such a conviction. Gralewskiv. Bur. of Workers' Comp., Franklin App. No. 05AP-604,2006-Ohio-1529, at ¶ 22 (bureau has no authority to consider mitigating circumstances of the conviction).
 {¶ 13} The bureau contends that the rule satisfies due process because appellee does not have a constitutionally-protected interest in continued certification as a HPP provider. A procedural due process violation does require, among other things, the deprivation of a constitutionally-protected interest. See Peoples Rights Org.,Inc. v. Montgomery (2001), 142 Ohio App.3d 443, 489. The bureau's focus on procedural due process in this case, however, is misplaced.
 {¶ 14} Due process has been interpreted to contain two components: procedural and substantive. State v. Ward (1999),130 Ohio App.3d 551, 557. "`Procedural due process' ensures that a state will not deprive a person of life, liberty, or property unless fair procedures are used in making that decision." Id. The essence of substantive due process is the protection from certain arbitrary, wrongful governmental actions irrespective of the fairness of the procedures used to implement them. SouthernHealth Facilities, Inc. v. Somani (Dec. 29, 1995), Franklin App. No. 95APE06-826.
 {¶ 15} Appellee does not argue that the procedure the bureau used to revoke his certification was unfair. Rather, he argues that the rule itself is arbitrary and unreasonable, a substantive due process argument. The trial court's decision also appears to be based on substantive, not procedural, due process grounds. A constitutionally-protected interest is not necessary for a successful substantive due process claim. State v. Small,162 Ohio App.3d 375, 2005-Ohio-3813, at ¶ 15, quoting Blau v. FortThomas Pub. School Dist. (C.A.6, 2005), 401 F.3d 381, 393. Therefore, we will determine whether the application of the rule violates appellee's substantive due process rights.
 {¶ 16} The Supreme Court of Ohio recited the standards for substantive due process under both the United States and Ohio Constitutions when a constitutionally-protected right is not involved:
"Under the Ohio Constitution, an enactment comports with due process `if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary.' * * * Federal due process is satisfied if there is a rational relationship between a statute and its purpose."
(Citations omitted.) Desenco, Inc. v. Akron (1999),84 Ohio St.3d 535, 545, quoting Fabrey, at 354.
 {¶ 17} Accordingly, a court applies a rational-basis test in examining the constitutionality of a rule on substantive due process grounds when a constitutionally-protected interest is not implicated. Under that test, a rule need only bear a rational relationship to a legitimate state purpose, and must not be arbitrary, discriminatory, capricious, or unreasonable. Oliverv. Feldner, 149 Ohio App.3d 114, 2002-Ohio-3209, at ¶ 40. The test is the same for appellee's equal protection claim. Wise v.Morrison (July 31, 2000), Stark App. No. 1999CA00272; State v.Bowman, Franklin App. No. 02AP-1025, 2003-Ohio-5341, at ¶ 26-28. Therefore, we include appellee's equal protection claim in our analysis of whether the application of the rule violates appellee's substantive due process rights. State v. Lance (Feb. 13, 1998), Hamilton App. No. C-970301.
 {¶ 18} We find that the rule does have a rational relationship to legitimate state interests. The state has a legitimate interest in ensuring that monies from the state workers' compensation insurance fund do not flow to convicted felons and those convicted for acts of fraud, and dishonesty. SeeGralewski, supra, at ¶ 44. The state has a legitimate interest in regulating the character, honesty, and business practices of its medical providers. Cf. Santer v. Globe Publications, Inc.
(1985), 26 Ohio App.3d 157, 161 (real estate brokers). The State also has a legitimate interest in preventing fraud. Girgis v.State Farm Mut. Auto. Ins. Co. (1996), 75 Ohio St.3d 302, 306. Preventing physicians who have convictions involving fraud, such as appellee, from being involved with the HPP is rationally related to these legitimate state interests.
 {¶ 19} Appellee argues that the rule is arbitrary and unreasonable when applied to him because his conviction occurred 25 years ago. We disagree. Appellee was convicted of conspiring to defraud an insurance company by submitting false and inflated medical bills. This conviction involves fraud and directly relates to his practice as a physician and to his professional judgment. It is not arbitrary, capricious, discriminatory, or unconscionable for the bureau to prohibit physicians with such convictions from treating its injured employees, especially when the bureau will be paying for those services — even when the conviction occurred 25 years ago.
 {¶ 20} While we can imagine a different set of facts where the rule's total bar to certification may raise substantive due process concerns, those facts are not before us. In his case, appellee was convicted of a crime involving fraud that directly related to his professional judgment and medical practice. It is not arbitrary, discriminatory, capricious, or unconscionable for the bureau to prevent a physician convicted of such a felony from providing services for its HPP.
 {¶ 21} The rule bears a rational relationship to legitimate state interests and is not arbitrary, capricious, discriminatory, or unconscionable. Accordingly, the rule does not violate constitutional guarantees of substantive due process or equal protection. We therefore reverse the trial court's decision finding the rule to be unconstitutional as applied to appellee. The bureau's single assignment of error is sustained and appellee's third cross-assignment of error is overruled.
 {¶ 22} Because of our disposition of the bureau's assignment of error, we will address appellee's remaining cross-assignments of error. In his first cross-assignment of error, appellee contends that the bureau was estopped from revoking his certification because the bureau was aware of his Florida conviction and still certified him in 1996 and again in 2002. We disagree.
 {¶ 23} Promissory estoppel is a quasi-contractual or equitable doctrine designed to prevent the harm resulting from the reasonable and detrimental reliance of one upon the false representations of another. San v. Scherer (Feb. 5, 1998), Franklin App. No. 97APE03-317. The elements of promissory estoppel require: "`[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' "Gralewski, supra, at ¶ 47;Mcroskey v. State (1983), 8 Ohio St.3d 29, 30. An essential element of promissory estoppel is the detrimental reliance of the promisee upon the false representations of the promisor. Karnesv. Doctors Hosp. (1990), 51 Ohio St.3d 139, 142.
 {¶ 24} Estoppel is generally not applied against the state or its agencies in the exercise of a governmental function. OhioState Bd. of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143,145-46; Sun Refining Marketing Co. v. Brennan (1987),31 Ohio St.3d 306, 307. This court, however, recognized an exception to that general rule in Pilot Oil Corp. v. Ohio Dept. of Transp.
(1995), 102 Ohio App.3d 278, 283. In that case, we applied estoppel against the state where: (1) the state uses its discretion in the interpretation of a law or rule, (2) the state's interpretation is not violative of legislation passed by the General Assembly of Ohio, and (3) the elements of promissory estoppel are otherwise met. Id.
 {¶ 25} This court recently refused to apply the Pilot Oil
estoppel exception to a very similar set of facts in Gralewski.
In that case, Gralewski applied to be a HPP certified provider in 1996. In his application, he disclosed a 1992 felony conviction for false pretenses and a 1993 felony conviction for mail fraud. Nevertheless, the bureau certified him as a HPP provider. In 2002, however, when Gralewski applied for recertification, the bureau denied his application due to his felony convictions. In his appeal to this court, Gralewski argued, pursuant to PilotOil, that the bureau should be estopped from decertifying him because it knew of his previous conviction when he was certified in 1996. We rejected the application of estoppel in that case because Gralewski did not otherwise satisfy the elements of estoppel. Gralewski, at ¶ 49.
 {¶ 26} We reject estoppel in this case as well. To begin, appellee does not satisfy the first element of the Pilot Oil
exception which requires the state's use of discretion in the interpretation of a law or rule. Appellee contends that the bureau used its discretion to interpret the requirements of R.C.4121.441 to adopt the rule that prohibits certification of physicians with certain convictions. Appellee's focus on the bureau's initial adoption of the rule is unavailing. Appellee claims that the bureau should be estopped from decertifying him under the rule. The focus of this argument is the bureau's application of the rule, not its adoption. The relevant act of the bureau, therefore, was its revocation of appellee's certification as a HPP provider in accordance with the rule, not the bureau's adoption of the rule.
 {¶ 27} The rule absolutely prohibits physicians who have certain convictions from certification as a HPP provider. Appellee had a conviction that fell under the prohibitions of the rule, and therefore, he was decertified. The bureau did not exercise discretion when it revoked appellee's certification. The bureau does not have any discretion under the rule if a physician has a disqualifying conviction. Gralewski, at ¶ 22. Nor did the bureau interpret the rule. The bureau simply applied the rule's complete prohibition from certification to a physician with a fraud related conviction. Absent the bureau's use of discretion in the interpretation of the rule, the Pilot Oil estoppel exception cannot apply in this case.
 {¶ 28} Appellee also does not satisfy the third Pilot Oil
element, which requires that the elements of estoppel are otherwise met. The bureau's certification of appellee was not a promise of continued certification in the HPP. The agreement entered into by appellee and the bureau in 1996 provided that the agreement would renew each year, subject to appellee's re-credentialing. The bureau is authorized to recertify a provider at least every two years. Ohio Adm. Code 4123-6-02(A). A certified provider may be recertified if, among other things, he meets the minimum requirements of Ohio Adm. Code 4123-6-022, including the requirement that a provider not have a history of a conviction involving dishonesty or fraud. Thus, the bureau did not promise appellee continued certification in the HPP. His certification was up for renewal at least every two years.
 {¶ 29} Appellee also did not detrimentally rely on his certification in the HPP. Appellee claims that he relied on his certification by increasing his practice's staff in order to comply with the increased administrative requirements of the HPP. However, he testified that he added these staff members as his practice grew and that the extra staff did more than just HPP administrative work. The added staff members also help with other patients appellee treats. Therefore, hiring additional help for his office is not a detriment to appellee.
 {¶ 30} Finally, the bureau was never legally authorized to certify appellee as a provider in the first instance due to his Florida conviction. Gralewski, at ¶ 49. The Pilot Oil court itself noted that its exception would not apply "when a position taken by an administrative agency is contrary to express statutory law * * *." Pilot Oil, supra at 283.
 {¶ 31} Because appellee does not satisfy the elements required to apply estoppel to the state, we overrule appellee's first cross-assignment of error.
 {¶ 32} Appellee contends in his second cross-assignment of error that the rule is invalid because it exceeds the scope of the bureau's authority granted to it by R.C. 4121.441. We disagree.
 {¶ 33} It is generally accepted that "`[t]he purpose of administrative rulemaking is to facilitate the implementation of legislative policy.'" Knutty v. Wallace (1992),84 Ohio App.3d 623, 627, quoting Carroll v. Dept. of Adm. Serv. (1983),10 Ohio App.3d 108. The delegation of rulemaking authority is generally thought to be necessary "`because of the infinite detail essential in the consideration of an application and the interpretation of the law to concrete and specific circumstances and situations, the incorporation of which in the statute itself would be impracticable or impossible.' "Taber v. Ohio Dept. ofHuman Services (1998), 125 Ohio App.3d 742, 750, quoting KrogerGrocery Baking Co. v. Glander (1948), 149 Ohio St. 120, 124. "The basic limitation on this authority is that an administrative agency may not legislate by enacting rules which are in excess of legislative policy, or which conflict with the enabling statute."P.H. English v. Koster (1980), 61 Ohio St.2d 17, 19.
 {¶ 34} R.C. 4121.441 directed the bureau to adopt rules for the HPP to provide medical services to injured employees. This was a broad delegation of rulemaking authority to the bureau. SeeNorthwestern Ohio Bldg. Constr. Trades Council v. Conrad
(2001), 92 Ohio St.3d 282, 287. The rules had to include, among other things, standards and criteria for the bureau to use in certifying, recertifying, penalizing, and decertifying a provider or vendor in the HPP. R.C. 4121.441(A)(11) and (12). Pursuant to this broad delegation of authority, the bureau adopted the rule prohibiting physicians with certain convictions from being certified as HPP providers. The rule represents exactly what the legislature contemplated in its mandate set forth in R.C.4121.441. Conrad. It established minimum qualifications for a physician to become HPP certified. The rule complies with and does not exceed the legislative mandate to establish standards and criteria for the bureau to determine whether or not to certify a physician as a provider. It is also reasonably related to the state's interests in regulating the character, honesty, and business practices of its medical providers and in preventing fraud. See Fehrman v. Ohio Dept. of Commerce (2001),141 Ohio App.3d 503, 510.
 {¶ 35} Appellee's second cross-assignment of error is overruled.
 {¶ 36} In his fourth cross-assignment of error, appellee contends that the bureau could not consider the records of his Florida conviction because they were sealed pursuant to R.C.2953.32. We disagree.
 {¶ 37} On March 27, 2003, the Franklin County Court of Common Pleas sealed all official records pertaining to appellee's Florida conviction. At his administrative hearing the next day, the bureau presented records of appellee's Florida conviction to the hearing officer. Appellee objected to the consideration of the records because they had been sealed. The hearing officer subsequently overruled the objection and considered the records in her decision-making process.
 {¶ 38} R.C. 2953.32(C)(2) provides that if a court seals records, the "proceedings in the case shall be considered not to have occurred * * *." See, also, R.C. 2953.33(A) (sealing of record "restores the person * * * to all rights and privileges"). The sealing of records, however, does not bar the use of sealed records in every situation. Szep v. Ohio State Bd. of Pharmacy
(1995), 106 Ohio App.3d 621, 623. R.C. 2953.33(B) allows an applicant for a license, right, or other privilege to be questioned about sealed convictions if "the question bears a direct and substantial relationship to the position for which the person is being considered." Appellee applied to become a HPP certified provider. Certification as a HPP provider would, at a minimum, be a privilege for which appellee applied, implicating the exception found in R.C. 2953.33(B).
 {¶ 39} Appellee claims that the exception does not apply because his Florida conviction does not bear a direct and substantial relationship to HPP certification. We disagree. Appellee's Florida conviction involved conspiring to defraud insurance companies by submitting false and inflated medical bills. Even though the conviction was from 1981, it concerns his medical judgment and fraudulent billing practices and bears a direct and substantial relationship to appellee's attempt to become certified to provide medical services to injured employees and to bill the bureau for those services. Cf. Moyer v. OhioMotor Vehicle Salvage Dealer's Licensing Bd. (Dec. 18, 2001), Crawford App. No. 3-01-19 (11-year old, sealed felony conviction for knowingly altering vehicle identification number could be considered by board because it directly and substantially related to salvage business); Ohio State Bd. of Pharmacy v. FriendlyDrugs (1985), 27 Ohio App.3d 32, 34 (inquiry into 15-year old sealed convictions for violating state and federal drug laws directly and substantially related to position of licensed pharmacist).
 {¶ 40} Appellee's reliance on State ex rel. Gains v. Rossi
(1999), 86 Ohio St.3d 620, in this context is misplaced. In that case, Rossi was elected as a village councilman ten years after being convicted of a felony. The county prosecutor filed a complaint to remove him from that position because he had a felony conviction. See R.C. 2961.01 (person convicted of felony prohibited from holding an office of honor, trust, or profit). Rossi subsequently had the records of that conviction sealed by a trial court. The Supreme Court of Ohio determined that a sealed felony conviction does not disqualify an individual from holding his office. That case, however, did not address the exception found in R.C. 2953.33(B) that allows questioning about sealed convictions if the questions bear a direct and substantial relationship to the position for which the person is being considered.
 {¶ 41} Appellee's Florida conviction bears a direct and substantial relationship to his certification as a HPP provider. The bureau, therefore, properly considered the sealed conviction to determine his qualifications for certification. Appellee's fourth cross-assignment of error is overruled.
 {¶ 42} Appellee contends in his fifth cross-assignment of error that the factual findings and conclusions of law adopted by the bureau were inadequate. The substance of this cross-assignment of error, however, merely reiterates appellee's previous arguments that: (1) the bureau could not consider the sealed records of his Florida conviction; (2) promissory estoppel prevents the bureau from decertifying him as a provider; and (3) the rule exceeds the scope of authority granted to the bureau. We have considered and rejected each of these arguments. Accordingly, appellee's fifth cross-assignment of error is overruled.
 {¶ 43} In conclusion, we sustain the bureau's single assignment of error and overrule appellee's five cross-assignments of error. Accordingly, the judgment of the Franklin County Court of Common Pleas is reversed and the matter is remanded to the trial court with instructions to reinstate the bureau's order revoking appellee's certification as a HPP provider.
Judgment reversed and cause remanded with instructions.
McGrath and Travis, JJ., concur.
[1] Appellee's Florida medical license is currently on inactive status.